IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-01695

LUPITA MONTOYA,

    Plaintiff,

v.

UNIVERSITY OF COLORADO, through its Board, THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff Dr. Lupita Montoya for her Complaint states:

## INTRODUCTION

1. This is an employment discrimination and retaliation suit brought by a Latina Research Associate employed by Defendant University of Colorado who worked as an Assistant Professor at CU's College of Engineering and Applied Science in Boulder until she was denied tenure and a promotion in 2017.

2. Plaintiff brings claims of sex and race discrimination and retaliation, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII"), as well as a claim of sex-based pay discrimination pursuant to the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206(d) ("EPA").

## PARTIES

3. Plaintiff Dr. Lupita Montoya is a resident of the State of Colorado.

4. Defendant University of Colorado ("CU") is a state institution of higher education established and regulated by Article IX, §§ 12 and 13, Colorado Constitution, and State statutory law, C.R.S. § 23-20-101, *et seq*.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331 and specifically under Title VII, as amended, 42 U.S.C. § 2000e *et seq.*, and the EPA, 29 U.S.C. § 206(d).

6. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the employment practices alleged to be unlawful were committed in the District of Colorado.

7. At all relevant times, Defendant CU was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII and 29 U.S.C. § 203(d) of the Fair Labor Standards Act, of which the EPA is a part.

## SPECIFIC ALLEGATIONS

**Plaintiff's Background**

8. Plaintiff identifies as Latina.

9. Plaintiff is an indoor air quality expert whose research is primarily in the area of the health effects of particulate matter, especially with respect to underrepresented groups and minority populations who suffer chronic health issues from the air they breathe.

10. For example, in the last few years, Plaintiff researched the hazards of indoor air pollution for residents of the Navajo Nation and Colorado nail salon workers.

11.     Plaintiff received her MS in Mechanical Engineering (Thermosciences) and PhD in Civil and Environmental Engineering from Stanford University in 1991 and 1999, respectively.

12.     After receiving her PhD, Plaintiff held appointments as a post-doc in environmental health and toxicology at the State University of New York at Albany and as a postdoctoral fellow in environment science and engineering at the Harvard School of Public Health.

13.     In 2003, Plaintiff joined the Civil and Environmental Engineering faculty at Rensselaer Polytechnic Institute in a tenure-track position where she remained for about six years.

**Plaintiff's Experience at CU**

14.     In January 2010, CU hired Plaintiff as an Assistant Professor in the Civil, Environmental and Architectural Engineering ("CEAE") Department at its University of Colorado Boulder ("CU Boulder") campus.

15.     The CEAE department is located within the College of Engineering and Applied Science ("CEAS").

16.     Plaintiff was the first full-time expert in air quality in the CEAE department.

17.     Women of color like Plaintiff are vastly underrepresented in engineering; for example, in 2017, they comprised less than 2% of all engineering professionals in the U.S.[1]

18.     Throughout her employment with CU, Plaintiff has been the only Latina faculty member in both the CEAE department and the CEAS.

---

[1] National Science Foundation, Women, Minorities, and Persons with Disabilities in Science and Engineering: 2017 (2017), https://www.nsf.gov/statistics/2017/nsf17310/.

19. During her employment at CU Boulder, Plaintiff witnessed Latino and/or female faculty members in the CEAS receive less favorable treatment than non-Latino and/or male faculty members. For example:

   a. During the annual evaluation process at the CEAS, the Dean's office changed the tentative faculty ratings sent to it by the departments within CEAS by increasing the ratings of non-Latino men and decreasing the ratings of Plaintiff, and other women and Latinos.

   b. The CEAS denied resources to Plaintiff and other female faculty members, including teaching assistants and funding for laboratory needs, while providing these resources to male and non-Latino faculty members.

   c. Male faculty members in the CEAE department have received more favorable teaching assignments, i.e., they are assigned to teach upper division and graduate level courses that are held at the Sustainability, Energy and Environment Community ("SEEC") at CU Boulder's East Campus that are smaller and garner higher teaching evaluations. In contrast, Plaintiff and other female faculty members are assigned to teach larger undergraduate courses that take place primarily at the Engineering Center on CU Boulder's main campus and for which they are graded more critically.

   d. Because the CEAE faculty have offices at the SEEC, Plaintiff and her female colleagues must travel between the SEEC and the congested main campus to teach where they have no office space to hold office hours for students; male faculty members are not similarly negatively impacted since they teach and have their offices at the SEEC.

  e. Upon information and belief, there has been and continues to be a disparity in pay between male and female faculty members at the CEAS.

20. In 2017 and/or 2018, Plaintiff earned about $2,500 less annually than three junior male non-Latino Assistant Professors in the CEAE department who earned their PhDs nearly 15 years after Plaintiff and who had not held tenure track positions before they started at CU.

**CU's Denial of Plaintiff's Tenure and Promotion**

21. In August 2016, Plaintiff applied for tenure and a promotion to Associate Professor.

22. Among other things, Plaintiff's tenure application and materials (a/k/a dossier) included letters from six academics outside of CU who reviewed Plaintiff's accomplishments during her time at CU and opined on whether she should be granted tenure and a promotion.

23. Five of the six reviewers unequivocally recommended that Plaintiff be granted tenure.

24. The sixth reviewer stated that, although Plaintiff would not likely be promoted in the reviewer's department, "there is reason for careful consideration considering [Plaintiff's] recent publication rate, the quality of the journals she has been publishing in, and her service to the profession and CU Boulder."

25. The CEAE department characterized this sixth reviewer's letter as "equivocal" not negative.

26. The sixth reviewer erroneously surveyed Plaintiff's research accomplishments over a 16-year period, rather than just her six years at CU, thereby diluting her accomplishments in the reviewer's analysis.

27. Based on the recommendations of the external reviewers, as well as Plaintiff's research, teaching, and service while at CU, a majority of the full tenured professors in the CEAE

department, along with the department chair, Dr. Balaji Rajagopalan, recommended that Plaintiff receive tenure and a promotion to Associate Professor.

28. Despite this recommendation of Plaintiff's closest colleagues, the First Level Review Committee ("FLRC"), comprised of faculty members from the entire CEAS, the Dean of the CEAS, Dr. Robert Braun, the campus-wide Vice Chancellor's Advisory Committee, and Provost Russell Moore all recommended against Plaintiff's promotion with tenure.

29. On May 10, 2017, Chancellor Philip DiStefano denied Plaintiff's promotion and tenure and, instead, provided her with a one-year terminal appointment.

30. CU President Bruce Benson denied Plaintiff's subsequent appeal of the tenure decision.

31. CU failed to follow the letter and intent of a number of its own relevant policies and procedures as it considered Plaintiff's application for promotion and tenure. For example:

   a. In its letters to Dean Braun recommending that Plaintiff not receive tenure, the FLRC failed to discuss why it disagreed with the CEAE department and Chair Rajagopalan or to ask for additional information about Plaintiff's application.

   b. Dean Braun failed to discuss each of the grounds of his disagreement with the CEAE department and Chair Rajagopalan's recommendation that Plaintiff receive tenure or to include the reasons for his difference in opinion in his letter to the Provost.

   c. In their assessment of Plaintiff's dossier, both Dean Braun and the FLRC judged the quality of the six external reviewers based on the ranking of the reviewer's home institution rather than on their individual expertise to evaluate Plaintiff's research. As a result, Dean Braun and the FLRC discounted five of the six external letters because the authors' institutions were allegedly "less scholarly" than CU and relied on the one

    equivocal letter because it came from a similarly "scholarly"/"peer" institution (when, in fact, the institution was ranked higher than CU).

   d. This "scholarly"/"peer" or "less scholarly" status of the external reviewers' institutions criterion was neither included in CU's tenure and promotion policies and procedures nor communicated to Plaintiff before her dossier was considered.

   e. In his letter to the Provost in which he recommended that Plaintiff not be granted tenure, Dean Braun mischaracterized her research as service.

   f. Dean Braun processed Plaintiff's application for promotion and tenure in a delayed fashion, which negatively impacted Plaintiff's candidacy.

32. Plaintiff submitted a formal grievance to CU's Privilege & Tenure Committee ("PTC") in August 2017.

33. The PTC appointed two tenured CU faculty to conduct an investigation into how CU had handled Plaintiff's application for promotion and tenure.

34. In their May 3, 2018 report, the investigators concluded that both procedural and substantive violations occurred in Plaintiff's tenure and promotion review and recommended that CU conduct a re-evaluation of Plaintiff's case using a revised dossier.

35. On May 30, a panel of the PTC, comprised of five tenured CU faculty, issued a report in which it encouraged Dean Braun to re-evaluate Plaintiff's research and/or mediate the matter given the evidence of possible violations of Plaintiff's rights and privileges as a CU faculty member.

36. In late July 2018, the Vice Chair of the PTC forwarded the investigatory and panel reports to the Chancellor and urged him to "facilitate reconsideration of [Plaintiff's] case."

37. The Chancellor was obligated to respond to the PTC's recommendations within a certain timeframe, but failed to do so.

38. Since Plaintiff's contract with CU ended in May 2017, she was given a one-year terminal contract through May 2018.

39. From June 1, 2018 through June 30, 2019, CU employed Plaintiff as a Research Associate, with a salary less than half of what she earned as an Assistant Professor.

40. Since July 1, 2019, Plaintiff has continued her Research Associate affiliation in an unpaid capacity.

41. In August 2018, Plaintiff requested a formal hearing to contest her denial of tenure. CU did not conduct the hearing until April 2019.

42. In the meantime, Plaintiff filed charge of discrimination no. 541-2019-00118 with the U.S. Equal Employment Opportunity on October 10, 2018.

43. Plaintiff amended her charge in November 2018 to reflect CU's refusal to promptly hold her formal hearing.

44. The hearing panel ultimately concluded that a procedural violation of university policy occurred during Plaintiff's tenure and promotion review; however, it did not overturn CU's denial of Plaintiff's promotion with tenure.

45. In or around early 2018, CU featured Plaintiff in its #ILookLikeAnEngineer campaign, which is designed to "showcase the diverse range of people who pursue engineering."[2]

---

[2] University of Colorado Boulder College of Engineering & Applied Science #ILookLikeAnEngineer, https://www.colorado.edu/engineering/ilook (last visited June 10, 2020).

46. After denying Plaintiff tenure, CU used a picture of Plaintiff conducting field work in Peru on a flyer that it sent to recruit students for its Environmental Engineering program stating "Be global.  Our program is known for cultivating globally minded engineers."

47. In May 2019, CU featured Plaintiff's recently published paper about the occupational hazards for nail salon workers on its CU Boulder Today website.

48. The EEOC issued a Notice of Right to Sue for Plaintiff's charge of discrimination on March 16, 2020.

## **STATEMENT OF CLAIMS**

### **FIRST CLAIM FOR RELIEF**
(Sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)

49. The foregoing allegations are realleged and incorporated herein by reference.

50. CU subjected Plaintiff to less favorable terms and conditions of her employment based on sex as described in this Complaint, including but not limited to: reducing Plaintiff's annual evaluations without cause; denying Plaintiff resources, including teaching assistance and funding for laboratory needs; paying Plaintiff less than her male peers; failing to follow CU's policies and procedures during Plaintiff's tenure and promotion review; denying Plaintiff tenure and a promotion to Associate Professor; and compelling Plaintiff to accept a significant pay cut and demotion in order to continue her employment with CU.

51. CU's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of her rights.

52. CU's conduct discriminated against Plaintiff based on her sex in violation of 42 U.S.C. § 2000e-2(a) of Title VII.

53.    As a direct and proximate result of CU's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
(Race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended)

54.    The foregoing allegations are realleged and incorporated herein by reference.

55.    CU subjected Plaintiff to less favorable terms and conditions of her employment based on race as described in this Complaint, including but not limited to: reducing Plaintiff's annual evaluations without cause; denying Plaintiff resources, including teaching assistance and funding for laboratory needs; paying Plaintiff less than her non-Latino peers; failing to follow CU's policies and procedures during Plaintiff's tenure and promotion review; denying Plaintiff tenure and a promotion to Associate Professor; and compelling Plaintiff to accept a significant pay cut and demotion in order to continue her employment with CU.

56.    CU's conduct discriminated against Plaintiff on the basis of her race in violation of Title VII.

57.    As a direct and proximate result of CU's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## THIRD CLAIM FOR RELIEF
(Retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended)

58.    The foregoing allegations are realleged and incorporated herein by reference.

59. Plaintiff participated in statutorily protected activity by opposing practices targeted at her that were unlawful under Title VII, including discrimination based on sex and race.

60. As a result of Plaintiff's protected opposition to discrimination, CU retaliated against her by subjecting her to the different terms and conditions of employment as described in this Complaint, including, but not limited to: failing to timely respond to her grievance; failing to process her request for a formal hearing on a timely basis; upholding CU's denial of Plaintiff's tenure and promotion; and compelling Plaintiff to accept a significant pay cut and demotion in order to continue her employment with CU.

61. CU's conduct violated 42 U.S.C. § 2000e-3(a) of Title VII.

62. As a direct and proximate result of CU's actions, Plaintiff has suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**FOURTH CLAIM FOR RELIEF**
(Sex-Based Wage Discrimination in violation of the Equal Pay Act of 1963, as amended)

63. The foregoing allegations are realleged and incorporated herein by reference.

64. During her employment with CU as an Assistant Professor, Plaintiff was performing work that was substantially equal to one or more male Assistant Professors considering the skills, duties, supervision, effort, and responsibilities of that role.

65. The conditions where the work was performed by Plaintiff and one or more male Assistant Professors was basically the same.

66. One or more male Assistant Professors was paid more than Plaintiff under such circumstances.

67. CU either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the EPA.

68. As a direct and proximate result of CU's actions, Plaintiff has suffered damages, including lost wages and benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Lupita Montoya respectfully requests that this Court enter judgment in her favor and against Defendant CU and order the following relief as allowed by law:

    A.    Reinstatement or front pay and benefits;

    B.    Back pay and benefits;

    C.    Compensatory damages, including but not limited to those for emotional distress, inconvenience, mental anguish, and loss of enjoyment of life;

    D.    Liquidated damages;

    E.    Injunctive and/or declaratory relief;

    F.    Attorney fees and costs of the action, including expert witness fees, as appropriate;

    G.    Pre-judgment and post-judgment interest at the highest lawful rate; and

    H.    Such further relief as justice allows.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted June 10, 2020.

        By:    SWEENEY & BECHTOLD, LLC

                s/Charlotte N. Sweeney
                650 S. Cherry St., Ste. 700
                Denver, CO 80246
                Telephone: (303) 865-3733
                Fax: (303) 865-3738
                E-mail: cnsweeney@sweeneybechtold.com

                s/Ariel B. DeFazio
                650 S. Cherry St., Ste. 700
                Denver, CO 80246
                Telephone: (303) 865-3733
                Fax: (303) 865-3738
                E-mail: abdefazio@sweeneybechtold.com

                ATTORNEYS FOR PLAINTIFF

Plaintiff's Address:
1120 Green Circle
Boulder, CO 80305

## CERTIFICATION OF GOOD STANDING

I hereby certify that I am a member in good standing of the bar of this Court.

By:   SWEENEY & BECHTOLD, LLC

s/Charlotte N. Sweeney
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: cnsweeney@sweeneybechtold.com

s/Ariel B. DeFazio
650 S. Cherry St., Ste. 700
Denver, CO 80246
Telephone: (303) 865-3733
Fax: (303) 865-3738
E-mail: abdefazio@sweeneybechtold.com

ATTORNEYS FOR PLAINTIFF